**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JUDITH HART BOONE,

               Plaintiff,

                                     Case No. 3:15-cv-842-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.
_____/

## OPINION AND ORDER[1]

### I.  Status

       Judith Hart Boone ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Plaintiff's alleged inability to work is the result of "[c]hronic migraines," "loss of eyesight," and "loss of memory."  <u>See</u> Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed September 3, 2015, at 255 (capitalization and emphasis omitted).  On October 21, 2011 and January 30, 2012, Plaintiff protectively filed applications for DIB and SSI, alleging an onset disability date of January 1, 2003 and June 30, 2003, respectively.[2]  Tr. at 215-16 (DIB); Tr. at 217-25 (SSI).  Plaintiff eventually amended her onset disability date for both applications to January

_____

       [1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  <u>See</u> Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed September 3, 2015; Reference Order (Doc. No. 13), entered on the same date.

       [2]      Her DIB protective filing date is listed elsewhere in the transcript as October 19, 2011. Tr. at 29, 92, 102, 105, 121.  Her SSI filing date is listed elsewhere as January 1, 2012.  Tr. at 29, 103, 113, 122.

1, 2004.  Tr. at 50.  Plaintiff's applications were denied initially, <u>see</u> Tr. at 92-101, 102, 124-29 (DIB); Tr. at 103, 130-35 (SSI), and upon reconsideration, <u>see</u> Tr. at 105-20, 121, 145-49 (DIB); Tr. at 122, 152-56 (SSI).

On November 10, 2014, an Administrative Law Judge ("ALJ") held a hearing at which the ALJ heard testimony from Plaintiff, who was present with counsel, and a vocational expert ("VE").  Tr. at 46-91.  At the time of the hearing, Plaintiff was fifty-six (56) years old.  Tr. at 51.  On December 8, 2014, the ALJ issued a Decision finding Plaintiff "has not been under a disability . . . from January 1, 2004, through the date of th[e D]ecision.  Tr. at 29-40.  Plaintiff then requested review by the Appeals Council, Tr. at 12, and submitted evidence to the Council in the form of a memorandum authored by her attorney representative and additional medical evidence, Tr. at 6; <u>see</u> Tr. at 304–06 (memorandum); Tr. at 454-57 (updated medical records of Dr. Frederic F. Porcase, D.O.).  On May 13, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner.  Tr. at 1-4.  On July 7, 2015, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff makes three arguments on appeal: (1) "[t]he Commissioner failed to articulate good cause for not crediting multiple treating opinions of Dr. Porcase ([Plaintiff's] treating physician since 1976) as far as the impact of her chronic migraine headaches on her ability to sustain full-time employment"; (2) "[a]lthough migraine headaches are not a listed impairment, the Commissioner erred in failing to address Listing 11.03 (non-convulsive epilepsy) even though the record demonstrates that her impairment medically equals this

listing"; and (3) "[d]espite finding that [Plaintiff] has migraine headaches, the Commissioner failed to analyze the frequency or severity of her headaches and her capacity to function during the headaches" in making his credibility assessment.  Plaintiff's Brief (Doc. No. 18; "Pl.'s Br."), filed November 30, 2015, at 1; see 9-23.  Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") on February 1, 2016. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons stated herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[3]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 31-40. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 1, 2004, the alleged [amended] onset date."[4]  Tr. at 31 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: migraine headaches, anxiety disorder, obesity, and history of cerebrovascular accident." Tr. at 31 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 32 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform medium work. . . . except no more than occasional climbing of ramps and stairs; no climbing of ladders and scaffolds; cannot work around unprotected height[s], moving mechanical parts, jobs involving driving a motor vehicle; or temperature extremes; is limited to simple tasks and work-related decisions with only occasional interaction with co-workers, supervisors, and the public; will be off task 5% of the time; and will miss one day a month due to impairments/treatment.

Tr. at 33 (emphasis and citations omitted). At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as a "wholesaler," "department manager," or "online sales order clerk." Tr. at 38 (some emphasis and citation omitted). At step five, after considering Plaintiff's age ("45 years old . . . on the alleged [amended] disability onset date"), education

---

[4]      The ALJ found that Plaintiff "worked after the alleged disability onset date, some of which was at the substantial gainful activity level; however, the [ALJ] . . . proceed[ed] [through] the remainder of the sequential evaluation based on testimony from [Plaintiff]." Tr. at 31. While Plaintiff "testified that she was an officer in a corporation, . . . [she] claimed that she did not perform any duties as required by corporate law." Tr. at 31.

("at least . . . high school"), work experience, and RFC, the ALJ found, with the assistance of testimony from the VE, that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 38-39 (emphasis and citations omitted), including representative occupations such as "dining room attendant," "linen room attendant," and "industrial sweeper cleaner," Tr. at 39. The ALJ concluded that Plaintiff "has not been under a disability . . . from January 1, 2004, through the date of th[e D]ecision." Tr. at 40 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner

must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

The three issues Plaintiff raises on appeal are addressed in turn below.

## A.  Medical Opinions

Plaintiff argues that the ALJ failed to articulate good cause for not crediting three opinions offered by her long-time physician, Dr. Porcase, who has treated Plaintiff for nearly forty years.  Id. at 9-16.  Defendant responds that the ALJ properly considered and weighed the opinions of Dr. Porcase and "gave good reasons, supported by substantial evidence in the record, for concluding that Dr. Porcase's opinion was entitled to little weight."  Def.'s Mem. at 6.

### 1.  Applicable Law

The Regulations establish a "hierarchy" among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists."  McNamee v. Soc. Sec. Admin., 164 F. App'x 919,

---

[5]        "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[6] the Regulations instruct ALJs how to properly weigh such a medical opinion.  See 20 C.F.R. § 404.1527(c).  Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician).  Id.

---

[6]	A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).  An examining physician's opinion, on the other hand, is not entitled to deference.  See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).

An ALJ is required to consider every medical opinion.  See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits

-8-

of the claim is rational and supported by substantial evidence." <u>Winschel</u>, 631 F.3d at 1179 (quoting <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981)).

### 2. Dr. Porcase

According to Plaintiff, she began treating with Dr. Porcase in 1976. Pl.'s Br. at 8, 9, 12. As noted by Defendant, however, the earliest treatment records contained in the administrative transcript are from 2005. Def.'s Mem. at 11 (referring to Tr. at 412). On the one 2005 visit evidenced in the record, Plaintiff was seen for a chief complaint of "migraine medication." Tr. at 412. Notes from the exam indicate that all systems, including "neuro," were "normal," and medication was prescribed. Tr. at 412.

The next treatment records are four visits from 2008. <u>See</u> Tr. at 408, 409, 410, 411. Those records reflect Plaintiff was seen for a cyst on her back, Tr. at 411; a cut to her left eye, Tr at 410; increased stress and headaches with the recent loss of her mom in 2008 and her dad in 2007, Tr. at 409; and follow-up for her headaches, Tr. at 408.

There are records in the transcript from four visits in 2009. <u>See</u> Tr. at 404, 405, 406, 407. On October 1, 2009, Plaintiff presented with complaints of being "very shaky [and] on edge." Tr. at 407. She reported having a headache for eight days. Tr. at 407. It was noted that she was being seen in follow-up from a "Mayo" visit in September 2009.[7] Tr. at 407. She presented to Dr. Porcase on October 28, 2009 regarding her low back pain in the "a.m." that "radiates down [her] l[eft] leg." Tr. at 406. On November 17, 2009, Plaintiff had complaints of "[c]ough, [c]ongestion, [b]ody [a]ches," and she thought "she [was] going

---

[7]     Plaintiff was seen at the Mayo Clinic in September 2009 for a neurologic consultation for complaints of "severe debilitating migraines." Tr. at 413.

through menopause." Tr. at 405.  On December 28, 2009, she was seen for vomiting and adjustment of her medication.  Tr. at 404.

There are records of seven visits to Dr. Porcase in 2010.  See Tr. at 320, 403 (January 19, 2010 and duplicate); Tr. at 319, 402 (February 11, 2010 and duplicate); Tr. at 318, 401 (March 15, 2010 and duplicate); Tr. at 317 (May 12, 2010); Tr. at 316 (July 9, 2010); Tr. at 315, 375, 400 (September 20, 2010 and duplicates); Tr. at 314, 374, 399 (November 10, 2010 and duplicates).  Plaintiff was seen in January and February 2010 for medication follow-up and refills.  Tr. at 319, 20.  She received an injection in February 2010 for her migraine headache.  Tr. at 319.  In March 2010, Plaintiff was seen with a chief complaint of increased back pain, and lumbar sprain was noted.  Tr. at 318.  In May 2010, Plaintiff had complaints of "migraine, med [refill], feet swelling."  Tr. at 317.  Plaintiff was seen in July 2010 for "med refills/nausea" and "chronic migraines."  Tr. at 316.  Plaintiff presented to Dr. Porcase in September 2010 with complaints of injuring her back, as well as a migraine and vomiting for four days.  Tr. at 315.  In November 2010, Plaintiff was seen for complaints of increased hot flashes and headaches.  Tr. at 314.  The "neuro" exam was noted to be abnormal and appeared to be related to her headaches, but the records are partially illegible.  Tr. at 314.

In 2011, Plaintiff was treated five times by Dr. Porcase for various problems, including "hot flashes [and] sweats," Tr. at 309; "[b]oil on back of neck," Tr. at 311; follow-up for "sore on back of neck," Tr. at 310; "cyst on her back" and "severe hot flashes," Tr. at 312; and injury to her left knee after falling, Tr. at 313; see also Tr. at 369-73 (duplicates).

In 2012, Plaintiff was seen in February and August.  Tr. at 308, 368 (February 28, 2012 and duplicate); Tr. at 328 (August 2, 2012).  Portions of the February 2012 records are

illegible except for the medication prescribed.  See Tr. at 308.  In August 2012, she was seen for refills of her headache medication.  Tr. at 328.

Plaintiff saw Dr. Porcase at least three times in 2013.  Tr. at 307, 391 (January 3, 2013 and duplicate); Tr. at 390 (month illegible); Tr. at 388, 397 (November 6, 2013 and duplicate).[8]  These 2013 visits were for follow-up to a hospital visit for her cataracts, Tr. at 307, for injury to her left ankle after she "tripped over [a] dog," Tr. at 390, and for increased blood pressure and migraine headaches, Tr. at 388.

Plaintiff submitted records from six dates of treatment in 2014.  Tr. at 394, 395, 454, 455, 456, 457.  In March 2014, she sought medication refills.  Tr. at 395.  In June, she had complaints of "slurred speech" and "fatigue."  Tr. at 394.  Also noted were "poss[ible seizures last [week]" that Plaintiff "d[id not] remember."  Tr. at 394.  On August 4, 2014, she presented with complaints of "new onset seizures noticed 1 [month] ago[,] sleeping/fatigue a lot."  Tr. at 457.  On August 28, 2014, she presented with "pink eye."  Tr. at 456.  In the October 7, 2014 visit, her headaches and high blood pressure were noted, and she obtained prescription refills.  Tr. at 455.  The October 30, 2014 record indicates she "wants a letter for disability." Tr. at 454.

Pertinent to Plaintiff's arguments, Dr. Porcase completed a "Headaches Medical Source Statement" on May 2, 2013 and another on July 29, 3013.[9]  Tr. at 376-79, 380-83. Both statements indicate a diagnosis of chronic migraine headaches that occur twenty-five

---

[8]     An additional treatment record (of a pap exam visit) dated July 30, 2013 appears to be signed by different doctors whose names are illegible, not Dr. Porcase.  Tr. at 389.

[9]     In her brief, Plaintiff only specifically discusses the July 2013 statement, not the one completed two months prior in May.  Pl.'s Br. at 10.

times per month.  Tr. at 376, 380.  The symptoms associated with her headaches include nausea, vomiting, throbbing pain, alteration of awareness, inability to concentrate, mood changes, exhaustion, visual disturbances, impaired sleep, impaired appetite, pain worse with activity, and avoidance of activity.[10]  Tr. at 376, 380.  The May 2013 statement notes that the impairments causing her migraines are unknown, but the July 2013 statement attributes the headaches to "anxiety/tension."  Tr. at 378, 381.  "Weather conditions" are also noted as a contributing factor on the July form.  Tr. at 381.  Both forms note that Plaintiff is "[i]ncapable of even 'low stress' work."  Tr. at 378, 381.  The July form states that Plaintiff "can get adequate relief if she uses her [p]rescription medication [and] has [b]ed [r]est" and that "medications tend to lessen severity of migraine."  Tr. at 382.  Both forms indicate that Plaintiff would "generally be precluded from performing even basic work activities and [would] need a break from the workplace" during times she has a headache.  Tr. at 377, 382.  The May form estimates that Plaintiff would miss work more than four days per month due to her impairments, Tr. at 377, but on the July form, the doctor answered that question "N/A," Tr. at 382.

Dr. Porcase completed another "Headaches Medical Source Statement" in October 2014.  Tr. at 449-452.  He again opined that she would be "[i]ncapable of even 'low stress' work" and that she is "unable to work with [headaches]."  Tr. at 450-51.  He estimated that Plaintiff would likely be absent from work more than four days per week as a result of her impairments.  Tr. at 451.

---

[10]    The May 2013 statement also includes symptoms of mental confusion and numbness. These are not included in the July statement.  See Tr. at 376.  The July statement does include vertigo as a symptom.  T0r. at 380.

On November 4, 2014, Dr. Porcase sent a letter to the ALJ opining that Plaintiff "is fully and totally disabled, incapable of performing any useful or gainful activity based upon her chronic, intractable migraine headaches that have failed to respond to any conventional therapy." Tr. at 453.

### 3. ALJ's Decision/Analysis

In attributing "some weight" to the opinions of Dr. Porcase, the ALJ stated as follows:

> The undersigned notes that Dr. Porcase has a treatment history with [Plaintiff], however, his statement regarding frequency/length of treatment with [Plaintiff] is not supported by his treatment records. Furthermore, Dr. Porcase's opined severity appears to rely heavily on the subjective reports of symptoms and limitations provided by [Plaintiff], which are not supported by the totality of the evidence. As noted above, [Plaintiff] is alleging disability as of January of 2004; however, there are no medical records in the file until July of 2005. Medical records from Family Medical Center (Dr. Porcase) covering the period July of 2005 thru June of 2014 show that [Plaintiff] was treated for chronic headaches/migraines in addition to corneal abrasion, high blood pressure, low back pain, cyst on back, left foot contusion, and knee pain. However, in record[s] submitted to this office, [Plaintiff] was seen only once in 2005, four times in 2008, four times in 2009, six times in 2010, five times in 2011, twice in 2012, four times in 2013, and two times in 2014. Furthermore, these notes are handwritten and hard to read. The undersigned also notes that Dr. Porcase noted that [Plaintiff] had seen numerous neurologists in the past and had been hospitalized a number of times for her migraines; however, there is only one examination from a neurologist in the file and only one hospital/ER visit for headaches.

Tr. at 37 (citation omitted).

The undersigned finds the ALJ stated adequate reasons for discounting the opinions of Dr. Porcase. Specifically, the ALJ noted that the treatment records of Dr. Porcase and the totality of the evidence do not support the wholly disabling limitations Dr. Porcase indicated in the Headache Source Statements and his November 2014 letter. Tr. at 37.

In assessing Dr. Porcase's opinions, the ALJ reasonably determined that the the record does not support Dr. Porcase's characterization of the frequency of Plaintiff's treatment.  For example, Dr. Porcase indicated that he has been treating Plaintiff since the 1970s, Tr. at 380, 449, 453, but the first record of treatment with Dr. Porcase that was provided by Plaintiff was from July 2005, Tr. at 412, even though her alleged onset of disability date is a year and a half prior in January 2004, Tr. at 50.  Moreover, Dr. Porcase stated that he treated Plaintiff monthly for her headaches, see Tr. at 380, 449,  but the only records provided were for one visit in 2005, two visits in 2012, eight visits in 2010, and four to five visits per year in 2008, 2009, 2011, and 2014, and not all of these visits were due to complaints of migraine headaches, see Tr. at 307-22, 328, 368-75, 394-97, 399-412, 452-57.  Indeed, many of the visits do not even reference Plaintiff's headaches. See, e.g., Tr. at 307, 310, 312, 313, 318, 389, 390, 456.  And those that do reference them contain little to no detail or are partially illegible.[11]  See, e.g., Tr. at 308, 309, 314, 315, 316, 317.

Plaintiff argues that she was not obligated to include every single record over a forty-year course of treatment.  Pl.'s Br. at 15.  While this may be the case, she does, nevertheless, have the responsibility of proving her disability.  See 20 C.F.R. § 404.1512(c).  As Plaintiff has failed to provide records that would support her claim and the representations of her doctor, the undersigned finds no error in the ALJ's discrediting Dr. Porcase's opinions in part because the doctor's statements are not supported by the evidence of record.

---

[11]     Plaintiff does not raise an issue of the ALJ's failure to develop the record based upon the illegible treatment notes, and thus the argument is considered waived given the Court's conclusion here that substantial evidence supports the ALJ's decision on this issue.  See, e.g., Yamin v. Comm'r of Soc. Sec., No. 607-cv-1574-Orl-GJK, 2009 WL 799457, at *13 (M.D. Fla. Mar. 24, 2009).

As for the other evidence of record, Dr. Porcase referenced Plaintiff being seen by "numerous neurologists" and being "hospitalized numerous times." Tr. at 453. Yet, as noted by the ALJ, the record contains only the one examination from a neurologist and one hospital/ER visit. Tr. at 37. The neurologic exam was conducted at the Mayo Clinic in Jacksonville on September 28, 2009.[12] Tr. at 413-35. The records contain results of an MRI of her brain that was normal. Tr. at 420. A review of her systems was essentially negative except for subjective complaints. Tr. at 417-18. It was noted that the "comprehensive neurologic examination [was] physiologic save for trace static tremor of the outstretched hands"; that "[d]isks [were] flat"; that "[m]eningeal signs absent"; and that "[t]emporal arteries [were] normal bilaterally." Tr. at 418. Plaintiff argues that normal brain MRIs and a lack of objective medical findings do not disprove the existence of migraine headaches. Pl.'s Br. at 13. The ALJ provided numerous reasons, however, why Plaintiff's subjective complaints are not supported by the record, including her daily activities, her essentially routine and conservative treatment, and her lack of discomfort at the hearing. Tr. at 37-38.

As for Plaintiff's hospitalization in December 2012, a review of those records reveals Plaintiff presented with a chief complaint of "coughing, fever and migraine." Tr. at 339. The records reflect Plaintiff "ran out of pain medication 8 days ago." Tr. at 339 (capitalization omitted). Even Dr. Porcase noted in July 2013 that Plaintiff gets "adequate relief if she uses her prescription medication" and that "medications tend to lessen severity of migraines." Tr.

---

[12]     Plaintiff completed an information form on September 8, 2009, but it appears that the exam itself was performed by Dr. David Capobianco on September 28, 2009. See Tr. at 416-419.

at 382.  Plaintiff has provided no other records of hospitalizations or treatment with neurologists.

Moreover, in this Circuit, "the ALJ [does] not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicted the opinion." Forrester v. Comm'r of Soc. Sec., 455 F. App'x 899, 902 (11th Cir. 2012).  Here, the ALJ noted that Plaintiff has "reported the following activities: taking care of personal needs, cooking, doing laundry, cleaning, mowing/working in the yard, shopping, being able to manage finances, watching television, driving once a week, occasionally sewing, going to the movies/out to eat with her daughter, and visiting family."  Tr. at 32 (citations omitted); see Tr. at 37.  The ALJ reasonably concluded that these activities evince an ability to maintain employment.  See Tr. at 37, 39-40.

For the foregoing reasons, the undersigned concludes that the ALJ stated adequate reasons for discounting the opinions of Dr. Porcase, and the Decision is due to be affirmed on this issue.

## B. Listing 11.03

In her second argument, Plaintiff contends "[t]he ALJ erred in failing to address Listing 11.03 as applied to [Plaintiff's] chronic migraine headaches."  Pl.'s Br. at 16 (emphasis omitted).  Plaintiff argues that the ALJ was obligated to discuss Listing 11.03 in light of the evidence regarding her migraine headaches and the Commissioner's own guidelines in the Program Operations Manual System (POMS) that identifies Listing 11.03 as being closely analogous to chronic migraine headaches.  Id. at 17-19.

In opposition, Defendant responds that "an ALJ need not 'state why a claimant failed to satisfy every different section of the listing of impairments.'"  Def.'s Mem. at 13 (quoting

Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990)) (other citations omitted).  Further, Defendant contends that "Plaintiff's argument wrongly assumes that the ALJ did not consider listing 11.03," when, in fact, according to Defendant, the Decision reflects that the ALJ considered all possible applicable listings.  Id. at 12-13.  Lastly, Defendant argues that Plaintiff does not meet or equal the Listing in any event.  Id. at 13-14.

At step three of the sequential evaluation process, the burden rests on the claimant to prove the existence of a listing-level impairment.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).  Mere diagnosis of a listed impairment is not sufficient.  See, e.g., id.; see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002).  "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement."  Wilson, 284 F.3d at 1224 (internal quotations and citations omitted).  "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings."  Id. (internal quotations and citations omitted).

"Listing 11.03, which addresses non-convulsive epilepsy, requires detailed documentation of seizures that occur more frequently than once a week, in spite of at least three months of prescribed treatment."  Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 920 (11th Cir. 2015) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03).  The Listing also requires a showing of "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day."  Id. (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03).  Moreover, as discussed by Defendant, the introductory paragraph to section 11.00 provides, "under . . . 11.03, the criteria can be applied only if the impairment persists despite the fact that the

individual is following prescribed antiepileptic treatment."  Def.'s Mem. at 15 (quoting  20 C.F.R. Pt. 404, Subpt. P, App. 1).

Here, the ALJ evaluated the evidence and found no listings were met or equaled.  Tr. at 32-33.   Specifically, the ALJ stated at step three that "[d]espite [Plaintiff's] combined impairments, the medical evidence does not document listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listing, individually or in combination."  Tr. at 32.

In support of her argument that the ALJ was obligated to discuss Listing 11.03 in light of the evidence of her migraine headaches, Plaintiff cites Mann v. Colvin, 100 F. Supp. 3d 710 (N.D. Iowa 2015).  See Pl.'s Mem. at 18-19, 21.  In Mann, the court held that the ALJ erred by failing to consider Listing 11.03 in light of the evidence of plaintiff's chronic, severe migraine headaches.  See Mann, 100 F. Supp. 3d at 720-21.  The migraine headaches at issue in Mann lasted several days and had resulted in emergency room visits at least ten times in the three years prior to the ALJ's decision in that matter.  Id. at 720-21.  During the same period, the plaintiff was also being treated by non-emergency doctors, including a neurologist.  Id. at 720.

Notwithstanding Plaintiff's arguments, the record evidence here of Plaintiff's migraine headaches is far less here than in Mann.  Unlike in Mann, Plaintiff has submitted no neurologist reports or any evidence that her migraine headaches have brought her to the emergency room.   Instead, the record here documents Plaintiff saw Dr. Porcase approximately eleven times in the three years prior to the Decision (2012-2014), and at least four of those visits were for reasons other than migraines.  See Tr. at 307, 308, 328, 388-90,

395, 454-57.  There is also little evidence of seizures.  As the ALJ noted, Plaintiff "stated she began having seizures two months ago and had had a total of three."  Tr. at 34.  The medical records reference seizures in August 2014, Tr. at 457, and possibly in June 2010, Tr. at 394.

Upon review of the record as a whole, the undersigned concludes that the ALJ's step three finding is supported by substantial evidence.  Particularly in light of the limited evidence of Plaintiff's migraines or seizures, the ALJ reasonably concluded based on the evidence of record that Plaintiff did not meet any of the Listings, and the ALJ was not required to specifically cite and discuss Listing 11.03 in the Decision.  See Gray ex rel. Whymss v. Comm'r of Soc. Sec., 454 F. App'x 748, 750 (11th Cir. 2011) (stating that "[a] finding that a claimant's impairments are not contained in the Listings may be implied from the ALJ's decision") (citation omitted).  Accordingly, the Decision is due to be affirmed on this issue.

## C. Credibility Finding

Plaintiff argues that other than the lack of records prior to 2008, the ALJ failed to articulate why he was discrediting Plaintiff's complaints of pain.  Pl.'s Br. at 23.  In this regard, she claims the ALJ erred in failing to properly analyze the evidence that included her being treated twenty-five to thirty times with the same doctor, along with the use of potent narcotic medications and injections to treat her migraines.  Id.  In response, Defendant points out that the ALJ discussed and considered Plaintiff's subjective complaints and gave several reasons for finding Plaintiff less than credible, including the objective medical evidence, the medical source opinions, her daily activities, and her treatment history.  Def.'s Mem. at 18.

To establish a disability based on testimony of pain or other subjective symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of any underlying

-19-

medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged subjective symptoms; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed subjective symptoms.  Wilson, 284 F.3d at 1225 (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that "the standard also applies to complaints of subjective symptoms other than pain")).   "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability."  Holt, 921 F.2d at 1223.

"[C]redibility determinations are the province of the ALJ."  Moore, 405 F.3d at 1212. The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225.  "When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms."  Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).   After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are

not entirely credible." Tr. at . 34.  In discussing the evidence supporting his credibility assessment, the ALJ stated:

> In terms of [Plaintiff's] alleged impairments, the evidence of record documents symptoms and limitations; however, the objective medical evidence, course and frequency of treatment, and noted [activities of daily living] do not establish disabling medical determinable impairments and symptoms.

Tr. at 34.

Upon review, the undersigned concludes that the ALJ articulated adequate reasons supporting the credibility assessment.  As discussed above, the objective medical findings do not support the disabling limitations alleged.  See Tr. at 417-20.  Moreover, despite Plaintiff's claim of daily headaches, her treatment with Dr. Porcase has been fairly conservative and is able to be managed with medication,  Tr. at 382, and there is no evidence in the record of any treatment with a specialist other than the neurologic evaluation at Mayo Clinic in September 2009, Tr. at 416-17.  Further, Plaintiff's daily activities demonstrate she is not as limited as she claims.  Despite her allegations of debilitating migraines, there is evidence in the record that she can do some cooking, Tr. at 68, "[d]o laundry, clean, mow," Tr. at 271, shop for "groceries [and] personal hygiene products," Tr. at 272, "go to a movie or lunch" with her daughter," Tr. at 273, and do yard work, Tr. at 400. Accordingly, because the ALJ gave specific reasons for the credibility finding, and these reasons are supported by substantial evidence, the Decision is due to be affirmed on this issue.

## V.  Conclusion

Based on a thorough review of the administrative transcript, and upon consideration of the respective arguments of the parties, the Court finds that the ALJ's Decision is supported by substantial evidence.

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on May 18, 2016.


_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

jde
Copies to:
Counsel of record

-22-